Wilson, J.,
concurring.
Our president judge, in his able opinion, has given such a full and clear statement of this case, as it is presented to us, that no further is necessary from me. He has also given such extracts from the testimony of the plaintiff — the only witness at the trial — as are necessary to show the application to the questions and issues involved of the views' which we express.
It is not at all clear to my mind that the evidence of the plaintiff shows any contract was entered into between him and the defendant upon which he could maintain an action; in other words, after disregarding the abstracts, as did my associate, and reading every line contained in the record and in the bill of exceptions, I entertain no doubt, according to the plaintiff’s own testimony and the circumstances attendant upon and connected with the transaction, that whatever contract he had was with Rucker, and whatever connection the defendant had with it was solely as Rucker’s agent and attorney. I am quite of the opinion that the testimony on this point, in support of the contract alleged in the complaint, was insufficient to have justified its submission to a jury, and in no event to have supported a verdict in plaintiff’s favor. However, it is unnecessary to further discuss this, because there are other questions sufficiently clear and free from doubt to be decisive of the case.
In my opinion, the judgment of nonsuit rendered by the trial court can be sustained and affirmed upon either one of two grounds: first, assuming the existence, as alleged, of a contract between plaintiff and defendant, there was a material and important variance between the terms of the contract declared upon in the complaint and that shown, or attempted to be shown, by the plaintiff in his testimony. In the com *318 plaint, the plaintiff alleged that the undertaking upon his part was to furnish “ certain documentary evidence necessary to the institution and maintenance of an action in which A. W. Rucker was plaintiff and J. B. Wheeler was defendant ; that such documentary evidence was genuine and was in the possession, and the private property, of plaintiff,” etc. According to plaintiff’s testimony, the documentary evidence referred to consisted of two letters from Wheeler to the plaintiff, showing that the former had knowledge of the existence of the bond given by plaintiff to Rucker. He goes further, however, and shows by his own testimony that in the contract there was another covenant to be performed on his part, that is, he was to render to Rucker, in the prosecution and maintenance of his suit such further assistance as was reasonable. What was meant by, and the importance of this covenant as interpreted by the plaintiff himself, I will refer to later on in this opinion. By the complaint, the only covenant or condition to be performed on the part of the defendant by the terms of the alleged contract was the payment to him (plaintiff) of one half of the fee defendant should l’eceive as attorney for Rucker in the suit. By his testimony, he shows that there were two other conditions: one that he should not be put on tbe witness stand by Rucker, and the other that he should not be hurt by the suit, that no judgment should be taken against him. These conditions and covenants were manifestly material parts of the contract, and the defendant had a right to be advised of them by the pleadings. The plaintiff could not recover on any contract other than that specifically alleged in his pleadings.
If there were any doubt about this proposition, the other ground in support of the nonsuit was clearly sufficient and conclusive, this is, that the contract as shown by the plaintiff, himself, if not manifestly contrary to public policy and against good morals, it was clearly such in its tendencies, and, hence, it was invalid and will not be enforced by the court.
In Casserleigh v. Wood et al., decided at the present term of this court, ante, p. 265, I took occasion in the opinion which *319 I wrote, to give somewhat at length my views as to the law applicable to the consideration of contracts when their validity was questioned, because of being against good morals or contrary to public policy. It is unnecessary to repeat them here. In that case we were called upon to determine whether a written contract, coupled with the allegations in the complaint seeking to enforce it, showed upon its face, no evidence having been taken, that it should not be enforced because such enforcement would violate good morals and be opposed to public policy. In my opinion it was not such a case. The plaintiff in that had not, so far as appeared from the complaint and the contract, agreed to testify himself, nor to secure others to testify, nor to furnish any evidence, except that which was then in his possession, which was presumptively at least documentary, and the furnishing of which would not require on his part any act of bad faith or fraud, or anything tending to a miscarriage of justice or to an inducement to or encouragement of perjury, or to the suppression or concealment of the truth. Upon the face of the pleadings, giving to them the broadest construction, I could not see that the plaintiff had contracted to perform, or had done any act either of omission or commission tainted in the slightest degree with moral turpitude. In this case the question is, whether a parol contract, as stated and explained by the party seeking to enforce it, while testifying as a witness in his own behalf, is obnoxious to the rules of good morals and public policy. The mere statement so clearly made by my associate of the terms of the contract here under consideration, according to plaintiff’s own construction of it, and according to his own admissions of the acts performed by him in furtherance of it, is sufficient to stamp it at once as clearly obnoxious to the settled rules of public policy and good morals declared by all of the authorities. The contract had its inception in fraud and bad faith, and so far at least as this plaintiff was concerned, was tainted with it at all times thereafter. The original foundation for the contract was a fraud upon Rucker, namely, a refusal to comply with the terms of *320 his bond, and the subsequent sale of the property to Wheeler. The agreement contemplated the grossest bad faith to Wheeler, because he was thereby attempting, for a moneyed consideration, after having pocketed Wheeler’s money, to defeat the title which he had conveyed. It may be said that Wheeler was not an innocent person, and, therefore, entitled to no protection from the law, and this may be true. Upon this theory Wheeler was, to some extent, particeps criminis with the plaintiff in the perpetration of the fraud upon Rucker. Conceding this, and that the plaintiff was under no legal or moral obligation to conceal or refuse a disclosure of the fraud, yet, upon principle and under all of the authorities, it would be obnoxious to good morals and sound public policy to enforce in the courts a contract whereby the plaintiff should have a reward or compensation for making such disclosure, when the necessity for the disclosure and the opportunity for making it were created solely by his own fraud. If this were permissible, it can be readily seen that the most powerful as well as pernicious encouragement and stimulus would he given to the perpetration of fraud.
Further, referring again to the condition of the contract that plaintiff should furnish to Rucker in the maintenance of his suit such further assistance as was reasonable, — what does this mean in the light of the facts, and of the plaintiff’s own testimony ? To have established Rucker’s right to recover in his suit against Wheeler, only two things were necessary to have been shown: first, that Wheeler purchased from plaintiff with full knowledge of the existence of plaintiff’s bond to Rucker, and second, that Rucker had, within the life of the bond, complied with its terms by making the required tender of payment, or that declarations of the plaintiff that he would not comply with the terms were such as in law to obviate the necessity of an actual tender. The first proposition would have been established by the two letters from Wheeler to plaintiff, which the latter delivered to Rucker or his attorneys, and which he swears was the only documentary evidence he was required to furnish by the *321 terms of his contract. The latter proposition could have been established only through Judkins, the agent and partner of Rucker, who, it was alleged, made the tender to plaintiff, or through the plaintiff himself. They were the only persons who had knowledge of the fact. It is manifest, therefore, that the only way in which plaintiff could have rendered Rucker any further assistance was by the furnishing of some testimony to corroborate Judkins, or by the forbearance to furnish any testimony against him. If plaintiff should have testified as a witness and corroborated Judkins, it would have been conclusive upon the point of tender. If he forbore to testify at all, this would have been most valuable assistance to Rucker, especially if Judkins’s statement had been incorrect. That the plaintiff, himself, considered the statements which Judkins was expected to make in support of the tender incorrect is, I think, shown by his own testimony. He states in his evidence that he told Rucker a good many times that if he put him on the witness stand, he would have to testify “ in the main ” against him, and hence Rucker came to the conclusion that he would not put him on the stand. Now, in what respect could the statements of the plaintiff be prejudicial to Rucker, except upon the question of the tender, or Wheeler’s knowledge 'of it ? That it was a part of this understanding, agreement, contract, or whatever you may call it, that the plaintiff should not go upon the witness stand, in order to prevent his testifying to facts in reference to the tender damaging to Rucker, is, in my opinion, clearly shown by the testimony of plaintiff himself. No other conclusion would be reasonable nor consistent with the undisputed facts, the objects and purposes to be attained and the positive statements of the plaintiff himself. That the plaintiff so considered it is, I think, positively shown by his own statement. When being interrogated as to what he meant by “ reasonable assistance,” and in what way he could have been of assistance other than in the presentation of the letters and testifying himself to the fact that a tender had been made and the deed refused, he said: “ I judge I could have *322 assisted them by keeping off the stand; certainly the way he looked upon it — the way Judge Rucker looked upon it after he found out what I would testify to; he didn’t want me to go on the stand, and said so.”
Nothing, to my mind, could he a plainer statement than this of plaintiff’s purpose and agreement under his contract to, at least — putting the most charitable construction upon it — do everything in his power to avoid being called upon to testify; and, in furtherance of this, he told Wheeler’s counsel, in effect, not to call him as a witness, because his testimony would be against Wheeler. If further confirmation were needed of this, it would be amply furnished by a letter which the plaintiff, after having in violation of his agreement with Rucker given to Wheeler’s counsel an affidavit to enable Wheeler to secure a new trial, wrote from Tucson, Arizona, where he was then sojourning, to one of Rucker’s counsel. In this, in addition to apologizing for the giving of the affidavit to Wheeler’s attorneys, and explaining the circumstances under which he felt compelled to make it, he proposed, as plainly as language could state it, that in the event a new trial was granted, he could still be loyal to Rucker and earn his money under this contract by again being disloyal to Wheeler; in other words, he proposed that if a new trial was had, he could evade testifying in the cause by remaining in some out of the way place in Mexico, so that Wheeler’s attorneys would be unable to find him either for the purpose of serving a subpoena or taking his deposition.
Clearly, therefore, the consideration of this contract now sought to be enforced was, in part at least, the suppression of testimony — and most important testimony too — material to the determination of rights involving a very large amount of property. This vice, in reason and according to all authorities, is as fatal to a contract as would he an agreement to furnish false testimony. It corrupts the fountains of justice by withholding from the courts the truth, that which it most urgently seeks, and which is absolutely necessary to a pure and proper administration of the law.
*323 The entire testimony of the plaintiff was uncertain and indefinite, confused, evasive and contradictory on most material questions. In response to interrogatories as to many facts which might have had an important bearing on the issues, and which it is most unreasonable to suppose that he should have forgotten, he answered, “ I don’t remember— I have no remembrance of it.” Comment upon these numerous questions and answers, strongly tending to impair the value and weight of his testimony, would extend this opinion beyond reasonable limits. The same reason prevents reference to, and comment upon, the contradictory affidavits which the plaintiff made during the course of this litigation, impartially, however, each party to the suit being favored in this respect.
For these reasons, I concur with Judge Bissell in his conclusion that the judgment in this cause was right, and should be affirmed.

Affirmed.

Thomson, J., not sitting.